UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| FABIAN BURNETTE ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | NO. 1:07-CV-293 |
| ) | MATTICE/CARTER |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security ) | |
|     Defendant ) | |

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. 10) and defendant's Motion for Summary Judgment (Doc. 12).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 40 years old at the time his insured status expired,[1] and had completed the eighth grade (Tr. 338). At the administrative hearing in January 2007, Plaintiff indicated that he

---

[1] To be entitled to DIB, Plaintiff had to establish that he was disabled prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.315(a)(1), 404.320(b)(2); Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990). There is no dispute that Plaintiff was insured only through June 30, 2005. Tr. 33.

1

had back pain with left leg muscle spasms, but that it had improved significantly (Tr. 343). He last worked in October 2004, at which time he stopped working because his bike fell out from under him and he hit the ground (Tr. 339).

Claim for Benefits

This is an action for judicial review of Defendant's final decision that Plaintiff was not entitled to Disability Insurance Benefits (DIB) under sections 216(I), 223 of the Social Security Act. See 42 U.S.C. §§ 416(I), 423(d). After a hearing, an Administrative Law Judge (ALJ) found that Plaintiff was not disabled and not entitled to benefits (Tr. 31-38). The Appeals Council's denial of review left the ALJ's decision as the Commissioner's final decision (Tr. 5-7). See 20 C.F.R. § 404.981. Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in

significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2005.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 21, 2004 through his date last insured of June 30, 2005 (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disk disease status post diskectomy and subsequent fusion (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work activity allowing an alternate sit/stand option that requires no more than "occasional" stooping but may require "frequent" climbing, balancing, crouching, kneeling, and crawling.

6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on February 19, 1965 and was 40 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was not under a disability as defined in the Social Security Act,

at any time from October 21, 2004, the alleged onset date, through June 30, 2005, the date last insured (20 CFR 404.1520(g)).

(Tr. 33-37).

## Issues Raised

Plaintiff seeks reversal of the Commissioner's decision, asserting the ALJ erred in finding Plaintiff was not disabled during his insured period on the basis Plaintiff began treatment during the insured period and was medically prevented from engaging in substantial gainful activity for a period longer than twelve months. Plaintiff argues he is entitled to a closed period of benefits for twenty-five months from October 2004 until November 2006.

## Relevant Facts

### Medical Evidence

A November 2004 MRI scan of Plaintiff's lower back showed disc herniations at two levels with nerve impingement (Tr. 221).

In November 2004, Dr. Loftman, a neurosurgeon, examined Plaintiff for back and left leg pain (Tr. 178-79). Dr. Loftman opined that Plaintiff probably had a symptomatic left L5 herniated disc, and recommended conservative therapy with epidural steroid injections and physical therapy (Tr. 179). Dr. Loftman also advised Plaintiff that he would have to consider shifting from heavy construction work (which he had done for 20 years) into some form of light work (Tr. 179).

A February 2005 MRI scan of Plaintiff's low-back again showed disc protrusions at two levels, both of which might contact or deflect exiting spinal nerves (Tr. 214).

Also in February 2005, Plaintiff told Dr. Kalson, a neurosurgeon, he continued to have

5

back and left leg pain (Tr. 208, 210). Based on the recent MRI scan, Dr. Kalson recommended surgery (Tr. 208).

In March 2005, Plaintiff underwent a microdiskectomy procedure at two points in his lower back; the procedure was performed by Dr. Kalson (Tr. 185-91).

In April 2005, Dr. Bounds, a state agency medical consultant,[2] reviewed the evidence of record and found that, in light of Plaintiff's recent surgery, he should be capable of medium work[3] by March 2006 (Tr. 194). Dr. Bounds also added that Plaintiff did not have a functional capacity lower than this for any 12-month period prior to his surgery (Tr. 194).

Later in April 2005, Dr. Kalson reported that Plaintiff's leg pain was gone, although he continued to have low-back pain (Tr. 204). Plaintiff was walking well and attending physical therapy (Tr. 204).

In May 2005, Dr. Kalson reported that Plaintiff did not have leg pain, but his back pain was getting worse (Tr. 202). Dr. Kalson recommended that Plaintiff continue with his exercise program, and, if Plaintiff's pain continued, a fusion surgery should be considered (Tr. 202).

In July 2005, Plaintiff complained to Dr. Kalson of severe back pain, and Dr. Kalson indicated that Plaintiff needed the fusion surgery (Tr. 199).

In August 2005, Dr. Downey, a state agency medical consultant, reviewed the evidence of record and found that Plaintiff could perform medium work, even though Plaintiff had continuing

---

[2]*"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 20 C.F.R. § 404.1527(f)(2)(I). These consultants are members of the teams that "make determinations of disability at the initial and reconsideration levels of the administrative review process." 20 C.F.R. § 404.1527(f)(1).*

[3]*Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of up to 25 pounds, and generally requires standing or walking, off and on, for approximately six hours in an eight hour day. 20 C.F.R. § 404.1567(c); Social Security Ruling 83-10.*

6

back pain and was a fusion surgery candidate (Tr. 223-30).

In September 2005, Dr. Kalson completed a form indicating that, as of June 2005, Plaintiff could only sit for 2 hours per day and stand/walk for 2 hours per day (Tr. 318). Dr. Kalson also indicated that Plaintiff would not be expected to be reliable in attending an 8-hour per day, 40-hour work week (Tr. 319).

In November 2005, Plaintiff underwent a low-back fusion surgery performed by Dr. Kalson (Tr. 267-71).

In March 2006, Dr. Kalson reported that Plaintiff had very little back pain, and his legs felt good (Tr. 281). Plaintiff, however, had developed some neck and arm pain/numbness (Tr. 281).

In May 2006, Dr. Kalson reported that, although Plaintiff continued to have upper-back and neck pain (for which he was seeing a neurologist), he had only intermittent lower-back pain (Tr. 273). Dr. Kalson recommended that Plaintiff work on strengthening his lower back (Tr. 273).

In November 2006, Dr. Kalson reported that Plaintiff was doing much better with his back (Tr. 328). Dr. Kalson indicated that Plaintiff should be discharged to follow up as needed, and had no restrictions except for lifting more than 50 pounds (Tr. 328).

<u>Testimony of the Vocational Expert (VE):</u>

The ALJ asked the vocational expert whether any jobs would be available for Plaintiff if he were limited to light work[4] with a sit/stand option (Tr. 349, 350). The vocational expert

---

[4]*Light work involves lifting no more than 20 pounds; or it may involve very little lifting, but require a significant amount of walking or standing; or it may involve some pushing or pulling of arm or leg controls, which requires greater exertion than in sedentary work. 20 C.F.R. § 404.1567(b).*

identified a significant number of packer and production worker jobs in Tennessee, and stated that other jobs would also be available (Tr. 350).

### ALJ's Decision

The ALJ found, as of June 2005, Plaintiff's date last insured, his assertion of disability was not credible and that he could perform a range of work as identified above in the hypothetical question posed to the vocational expert (Tr. 34). Based on this finding and the expert's testimony, the ALJ further found that, as of Plaintiff's date last insured, he could perform a significant number of jobs, and thus was not entitled to disability benefits (Tr. 37-38).

### Analysis

Plaintiff argues he was entitled to a closed period of benefits beginning in October 2004 (Plaintiff's alleged disability onset date) and continuing until November 2006, when Dr. Kalson stated that Plaintiff had no restrictions other than lifting 50 pounds. Plaintiff asserts that he is entitled to this period of disability benefits in light of the fact that he underwent two back surgeries (Doc. 11, pp. 5-6).

To be entitled to disability benefits (either a closed period or ongoing benefits), a claimant must show that his impairment lasted at a disabling level for a continuous period of 12 months or more. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 404.1509. Here, as the Commissioner argues, while the evidence before the ALJ likely showed that Plaintiff was unable to work for certain periods of time (such as around the periods of his two back surgeries), the ALJ could reasonably find that the evidence did not show that Plaintiff was continuously disabled for any 12-month period, and could properly conclude that he was not entitled to a closed period of benefits. The following evidence supports this conclusion.

8

First, shortly after Plaintiff's alleged onset date, Dr. Loftman advised Plaintiff that he should consider shifting from heavy construction work, that he was going to have to rehabilitate into some kind of light work, but did not indicate that Plaintiff was disabled (Tr. 179).

Second, in April 2005, Dr. Bounds reviewed the record, noted that Plaintiff had undergone recent back surgery, and opined that Plaintiff was capable of at least medium work for the period prior to his back surgery (Tr. 194).

Third, Dr. Bounds opined that Plaintiff should be sufficiently recovered from his back surgery to again be capable of medium work by March 2006 (Tr. 194). Plaintiff argues this latter opinion from Dr. Bounds is "optimistic speculation" since Dr. Bounds could not have known that Plaintiff would require a second surgery in November 2005 (Doc. 11 p. 6). However, the evidence from Dr. Kalson shows in March 2006 that Plaintiff had very little remaining back pain, and his legs felt good. He was going through physical therapy and was now complaining of neck pain and a twitch in his neck (Tr. 281). This new problem appears over 8 months after his date of last insured. The question is whether Plaintiff established he was disabled for at least a 12-month period beginning on or before his date last insured. On this issue, the evidence shows that Plaintiff did not have such a period through March 2006 or beginning at any time prior to his date last insured.

In April 2005, just two months prior to his date of last insured, Dr. Kalson reported that Plaintiff's leg pain was gone. Although he continued to have some back pain, he was walking well and attending physical therapy (Tr. 204). In May 2005, Plaintiff denied any leg pain but his back pain did appear to worsen. Dr. Kalson recommended that Plaintiff continue with his exercise program (Tr. 202). In August 2005, Dr. Downey reviewed the record and opined in a

9

Physical Residual Functional Capacity Assessment that, even though Plaintiff had continuing back pain and was a fusion surgery candidate, he was still capable of medium work (Tr. 222-30).

A month later, in September 2005, Dr. Kalson opined that Plaintiff's condition did not allow for the performance of full-time work activity (Tr. 318-19), but the ALJ found that this opinion did not establish disability under the Act because Dr. Kalson's later records showed that Plaintiff improved dramatically (Tr. 36). The ALJ concluded that Dr. Kalson's opinion indicated that Plaintiff's condition was very limiting just prior to his second surgery (Tr. 36, fn.1). And, as recognized by the ALJ, the evidence of record after Plaintiff's second back surgery showed that Plaintiff's back and leg pain largely resolved, and, indeed, Dr. Kalson discharged Plaintiff to follow-up status and limited him only as to lifting more than 50 pounds (Tr. 273, 281, 328).

Because the evidence as discussed above fails to show that Plaintiff was disabled (i.e., unable to perform light work with a sit/stand option) for any continuous 12-month period, Plaintiff's argument that he was entitled to a closed period of benefits fails. There was conflicting evidence which the ALJ had to weigh. He rejected the medical opinion form of Dr. Kalson, which he noted could be interpreted as consistent with disability. He did so on the basis his office notes consistently reported good progress and on the basis that the opinion was confusing and/or internally inconsistent (Tr. 35). Other evidence in the record to support the ALJ were the opinions of Dr. Loftman, Dr. Bounds and Dr. Downey.

If it is supported by substantial evidence, the ALJ's determination must be affirmed, even if substantial evidence would support an opposite finding. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996). A court should not even inquire whether substantial evidence could support a decision the other way. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.

1989). If the record as a whole contains substantial evidence to support the Commissioner's determination, a court must affirm the decision. *Garcia v. Sec'y of Health & Human Servs.*, 46 F. 3d 552, 555 (6th Cir. 1995). The Commissioner, not the court, is charged with the duty to weigh the evidence, resolve material conflicts in testimony and to decide the case accordingly. 42 U.S.C. § 405(g); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). Further, credibility is weighed by the Commissioner. *Crum*, 921 F.2d at 644 (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Therefore, judicial review of the Commissioner's decision is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

  In this case, the evidence provides reasonable support for the ALJ's finding that, with some short exceptions that did not last 12 months, Plaintiff was capable of performing a range of light work through his date last insured. And, as the ALJ further found, this was consistent with the ability to perform a significant number of jobs.

Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 12) be GRANTED, and plaintiff's Motion for Judgment on the Pleadings (Doc. 10) be DENIED.[5]

Dated:  January 28, 2009            s/William B. Mitchell Carter
                                    UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).